**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| VOXTUR ANALYTICS CORP., *et al.*[1] | Case No. 25-11996 |
| Debtors in a foreign proceeding. | (Joint Administration Pending) |

**DECLARATION OF GARY YEOMAN IN SUPPORT OF**
**VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING**
**AND RELATED RELIEF AND MOTION FOR PROVISIONAL RELIEF**

I, Gary Yeoman, declare under penalty of perjury under the law of the United States of America that the following is true and correct to the best of my knowledge, information, and belief:

**I.     INTRODUCTION**

1.      I am the Executive Chairman of Voxtur Analytics Corp. ("Voxtur" or the "Foreign Representative").  I began my tenure as a member of the board of Voxtur in 2013 and was interim

---

[1] The Debtors in these Chapter 15 Cases, along with the last four digits of their federal tax identification numbers or other unique identifier are:  Voxtur Analytics Corp., an Ontario corporation (8993); Appraisers Now Ltd., an Alberta limited company (7171); Appraisers Now US, LLC, a Delaware limited liability company (8411); Blue Water Financial Technologies Holding Company, LLC, a Minnesota limited liability company (6970); Blue Water Financial Technologies Services, LLC, a Minnesota limited liability company (1646); Blue Water Financial Technologies, LLC, a Delaware limited liability company (1901); Clarocity Inc., a Delaware corporation (2105); Commonwealth USA Settlements, LLC, a Pennsylvania limited liability company (6173); iLOOKABOUT (US) Inc., a Delaware corporation (9588); iLOOKABOUT Inc., an Ontario corporation (8046); Legend Title Company, LLC, a Colorado limited liability company (6134); MTAG Paralegal Professional Corporation, an Ontario corporation (7698); MTE Paralegal Professional Corporation, an Ontario corporation (7210); Municipal Tax Equity Consultants Inc., an Ontario corporation (9627); Orange & Blue Holdings 3.0, LLC, a Florida limited liability company (6022); Orange & Blue Holdings 4.0, LLC, a Florida limited liability company (1696); Orange & Blue Holdings 5.0, LLC, a Florida limited liability company (0278); Valuation Vision Inc., a California corporation (5555); Voxtur Analytics US Corp., a Delaware corporation (1392); Voxtur Settlement Services of Alabama, LLC, an Alabama limited liability company (1630); Voxtur Settlement Services of Arkansas, LLC, an Arkansas limited liability company (4979); Voxtur Settlement Services, LLC, a Florida limited liability company (9303); Voxtur Technologies US, Inc., a Delaware corporation (2142); Voxtur Title Agency, LLC, a Delaware limited liability company (1965); and Voxtur Valuation, LLC, a Kansas limited liability company (8633). The Foreign Representative's mailing address is: 543 Ridout Street North, London, Ontario, N6A 2P8.

Chief Executive Officer from March 2022 to July 2024.  While serving as interim Chief Executive Officer and as a director, I was also appointed as Interim Chairman on March 8, 2024 and subsequently appointed Executive Chairman on June 28, 2024.  I currently continue to serve as Executive Chairman.

2.      Voxtur and certain of its Canadian and U.S-based subsidiaries are the debtors (collectively, the "Debtors") in these Chapter 15 bankruptcy cases (these "Chapter 15 Cases"), and in the Canadian insolvency proceeding *In the Matter of a Plan of Compromise or Arrangement of Voxtur Analytics Corp., et al.*, Ontario Supreme Court of Justice, Court File No. CL-25-00753573-0000 (the "Canadian Proceeding") pending under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA").

3.      I am competent to testify and make this declaration on personal knowledge, the business records of the Company (as defined herein), and information obtained in consultation with the management team, and I verifiably believe such information to be true.

4.      I make this declaration in support of:  (i) the Official Form 401 *Chapter 15 Petition for Recognition of a Foreign Proceeding* filed in this Court for each Debtor; (ii) the *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief*; (iii) the *Motion for Provisional Relief*; (iv) the *Motion to Approve Notice of Chapter 15 Petition and Schedule Recognition Hearing*; (v) the *Motion for Joint Administration of Chapter 15 Cases*; and (iv) the *Motion for Interim and Final Authority to Obtain Post-Petition Financing and Use Cash Collateral*.

## II.    THE DEBTORS

5.      Voxtur is a Canadian-based real estate technology company that operates in Canada and the United States (collectively with all Debtor and non-Debtor subsidiaries, the "Voxtur

Group" or the "Company").  Prior to a significant merger in 2021, the Company focused on real estate imaging and valuation technologies, but later evolved through several strategic acquisitions into the broader, fully integrated real estate analytics platform it is today.  The Company develops and provides technology platforms and related services that support property valuation, tax assessment, title and settlement, and mortgage capital markets activities.

### A.    Corporate Structure

6.    Below is an organizational chart that includes all of the entities in the Voxtur Group's corporate structure.  The entities depicted in red are not Debtors in the Canadian Proceeding or in these Chapter 15 Cases.



7.    Voxtur is the public parent company in the Company's corporate structure. Voxtur's shares were traded in Canada on the TSX Venture Exchange (TSX-V) under the symbol VXTR until such time as they were cease-traded on September 5, 2025.  Voxtur's shares were also traded in the United States on the OTCQB under the symbol VXTRF but were de-listed to the Pink Limited Market.

8.      Voxtur was incorporated under the Ontario *Business Corporations Act* on April 1, 2008.  Its registered head office is located at 543 Ridout Street North, London, Ontario.

9.      Voxtur directly or indirectly owns 100% of all of the Debtors, with the exception of MTAG Paralegal Professional Corporation and MTE Paralegal Professional Corporation (the "Paralegal Corporations").

10.     The Paralegal Corporations are Ontario paralegal professional corporations.  All directors of paralegal corporations must be licensed paralegals (or lawyers) who are in good standing with the Law Society of Ontario (LSO), and who are also shareholders of the corporation. I am a licensed paralegal and the sole director and officer of the Paralegal Corporations.  Voxtur (through myself as an officer of Voxtur and as a licensed paralegal), incorporated the Paralegal Corporations for the Company to provide specific paralegal services.  The Paralegal Corporations and Voxtur are parties to a management services agreement pursuant to which Voxtur contractually controls the Paralegal Corporations.

11.     Below is a summary of Voxtur's wholly owned subsidiaries (and the Paralegal Corporations) which are the Debtors in the Canadian Proceeding and in these Chapter 15 Cases:

|   | Entity Name | Jurisdiction | Incorporation Date and Registered Head Office |
|---|---|---|---|
| 1. | iLOOKABOUT Inc. | Ontario | Incorporated on April 28, 2000. Amalgamated with Municipal Tax Advisory Group Inc. on January 1, 2021<br><br>175 Bloor Street East #1105 South Tower, Toronto, ON |
| 2. | MTAG Paralegal Professional Corporation | Ontario | May 26, 2017<br><br>543 Ridout Street North, London ON |
| 3. | MTE Paralegal Professional Corporation | Ontario | April 11, 2008<br><br>543 Ridout Street North London ON |

| | Entity Name | Jurisdiction | Incorporation Date and Registered Head Office |
|---|---|---|---|
| 4. | Municipal Tax Equity Consultants Inc. | Ontario | November 14, 1990<br><br>543 Ridout Street North<br>London ON |
| 5. | Appraisers Now Ltd. | Alberta | Incorporated March 8, 2011<br><br>3400, 350 – 7th Ave SW<br>Calgary, Alberta |
| 6. | Appraisers Now US, LLC | Delaware | July 29, 2021<br><br>850 New Burton Rd Suite 201<br>Dover, Delaware USA |
| 7. | Blue Water Financial Technologies, LLC | Delaware | October 9, 2018<br><br>850 New Burton Rd Suite 201<br>Dover, Delaware USA |
| 8. | Clarocity Inc. | Delaware | October 11, 2016<br><br>850 New Burton Rd Suite 201<br>Dover, Delaware USA |
| 9. | iLOOKABOUT (US) Inc. (dba Apex Software) | Delaware | October 22, 2007<br><br>850 New Burton Rd Suite 201<br>Dover, Delaware USA |
| 10. | Voxtur Analytics US Corp. | Delaware | July 6, 2021<br><br>850 New Burton Rd Suite 201<br>Dover, Delaware USA |
| 11. | Voxtur Technologies US, Inc. | Delaware | January 27, 2021<br><br>850 New Burton Road Suite 201<br>Dover, Delaware, 19904<br>(Registered agent address) |
| 12. | Voxtur Title Agency, LLC | Delaware | December 13, 2021<br><br>850 New Burton Road Suite 201<br>Dover, Delaware, 19904<br>(Registered Agent Address) |
| 13. | Voxtur Settlement Services of Alabama, LLC | Alabama | January 13, 2016<br><br>2 N Jackson Street, Suite 605<br>Montgomery, AL 36104 |

|  | Entity Name | Jurisdiction | Incorporation Date and Registered Head Office |
|---|---|---|---|
| 14. | Voxtur Settlement Services of Arkansas, LLC | Arkansas | February 5, 2021<br><br>2 N Jackson Street, Suite 605 Montgomery, AL 36104 |
| 15. | Valuation Vision Inc. | California | August 21, 2014<br><br>1325 J St STE 1550 Sacramento, CA (Registered Agent address) |
| 16. | Legend Title Company, LLC | Colorado | November 6, 2013<br><br>600 17th St Ste 1450S Denver, CO 80202 (Registered Agent address) |
| 17. | Orange & Blue Holdings 3.0, LLC | Florida | June 13, 2019<br><br>115 North Calhoun St., Suite 4 Tallahassee, FL |
| 18. | Orange & Blue Holdings 4.0, LLC | Florida | August 12, 2019<br><br>2202 N. Westshore Blvd, Suite 200 Tampa, FL |
| 19. | Orange & Blue Holdings 5.0, LLC | Florida | June 25, 2020<br><br>2202 N. Westshore Blvd, Suite 200 Tampa, FL |
| 20. | Voxtur Settlement Services, LLC | Florida | May 21, 2013<br><br>2202 N. Westshore Blvd, Suite 200 Tampa, FL 33607 |
| 21. | Voxtur Valuation, LLC | Kansas | June 16, 2011<br><br>2101 SW 21st St. Topeka, KS 66604-3174 |
| 22. | Blue Water Financial Technologies Holding Company, LLC | Minnesota | January 14, 2019<br><br>6160 Summit Dr. N Ste. 205 Brooklyn Center, Minnesota |
| 23. | Blue Water Financial Technologies Services, LLC | Minnesota | April 29, 2019<br><br>6160 Summit Dr. N Ste. 205 Brooklyn Center, Minnesota |

| | Entity Name | Jurisdiction | Incorporation Date and Registered Head Office |
|---|---|---|---|
| 24. | Commonwealth USA Settlements, LLC | Pennsylvania | January 4, 2013<br><br>4 Penn Center West, Suite 400<br>Pittsburgh, PA 15202 |

12.     The entities depicted in red in the corporate chart are entities that either have no assets or liabilities, or are not direct subsidiaries of Voxtur.

13.     Each of the U.S. Debtors has assets in Canada by way of funds held on retainer on their behalf in trust by Canadian counsel.

14.     The Voxtur Group operates as a single integrated property technology business despite comprising 25 entities across Canada and the United States.  The "one stop solution" concept that the Company offers its client (*i.e.*, providing "end-to-end solutions" covering all aspects of the real estate lifecycle), explains the nature of the combined operations and the high degree of corporate interdependence.

**B.     Business and Operations**

15.     The Voxtur Group has operations in both Canada and the United States.  Its real estate technology products allow clients to value real property assets, originate and service mortgage loans, securitize portfolios, and evaluate property tax assessments. The Company's clients include both private and public entities across North America.

16.     Described in simple terms, the Company employs proprietary software and data tools to make the buying, selling, financing and managing of real estate assets as seamless, cost-efficient and user-friendly as possible.

17.     The Voxtur Group's business is organized into distinct divisions that address different aspects of the real estate and mortgage lifecycle.  These divisions include (i) Appraisers Now ("ANOW"), which provides appraisal workflow management software; (ii) iLOOKABOUT

("iLOOKABOUT"), which provides real property data related to software, imagery, data and analytics solutions; (iii) Blue Water Financial Technologies ("Blue Water"), which provides digital tools for mortgage asset trading and related risk management functions; and (iv) the Company also had a U.S. based division that provided title and settlement services ("Title and Settlement Services"), which ranged from traditional residential and commercial sales, to default-related dispositions.

### i. ANOW (Appraisers Now)

18.     ANOW is a software-as-a-service (SaaS) platform used primarily by appraisers, lenders, and appraisal management companies to manage the valuation process. The lender/appraisal management solution connects directly to a lender's loan origination system and uses a rules-based routing engine to send appraisal orders directly to appraisers. The platform includes tools for order management, scheduling, compliance tracking, and report delivery, allowing users to monitor and complete appraisal assignments more efficiently. ANOW's system is cloud-based and is designed to standardize and digitize workflows for the valuation process, which is a requirement in mortgage lending and related financial transactions.

19.     Appraisers Now Ltd. and Appraisers Now US, LLC are the Debtor subsidiaries that operate the ANOW business, own the assets associated with the ANOW business, and employ the individuals who work in this division.

### ii. iLOOKABOUT

20.     iLOOKABOUT provides property data and analytics services used for real property tax assessment, valuation, and related applications. This division aggregates and maintains property-level data and imagery and offers tools that allow municipalities, lenders, and other users to analyze and validate property characteristics for assessment and taxation purposes.

iLOOKABOUT's services are used to assist in property valuation and to support fair and accurate property assessments, which are essential for municipal taxation and mortgage underwriting. iLOOKABOUT (US) Inc. d/b/a Apex Software is the industry leader in floor plan sketching, offering various sketching products and sketching services which include sketch creation, sketch verification and analysis processes.

21.     iLOOKABOUT Inc. and iLOOKABOUT (US) Inc. are the Debtor subsidiaries that operate iLOOKABOUT's business.  iLOOKABOUT (US) Inc. is wholly owned by the holding company, Clarocity, Inc., which has no other business or assets.

22.     The Paralegal Corporations and Municipal Tax Equity Consultants Inc. ("MTE Consultants") all relate to the iLOOKABOUT's tax assessment business.  The Paralegal Corporations provide paralegal services, including representing clients in respect of applications before the Assessment Review Board (ARB) tribunal.  As described above, the Paralegal Corporations are controlled by Voxtur through a contractual arrangement between Voxtur and the sole director of the Paralegal Corporations.

### iii. *Blue Water*

23.     Blue Water provides technology solutions for participants in the mortgage capital markets, including tools for the valuation, sale, and transfer of mortgage servicing rights and related assets.  The platform includes applications for pricing, risk assessment, and transaction execution in connection with mortgage asset trading.  Blue Water also offers technology-enabled due diligence and compliance review services for mortgage portfolios.  These tools are intended to facilitate the transfer of mortgage-related assets between originators, investors, and servicers in an efficient and standardized manner.

24.     Blue Water Financial Technologies Holding Company, LLC, Blue Water Financial Technologies, LLC, and Blue Water Financial Technologies Services, LLC are the Debtor subsidiaries that operate the Blue Water business, own the assets associated with the Blue Water business, and employ the individuals who work in this division.

25.     As described in detail below, the Blue Water business was acquired by Voxtur in 2022, and this aspect of the business is currently the subject of significant litigation in the United States.

### iv.  *Title and Settlement Services*

26.     The Company's Title and Settlement Services division sells title products and e-closing solutions to lenders, asset managers, title agents, brokers, realtors, under-writers and other customers in the United States.  The Title and Settlement Services division is operated by the following U.S.-based Debtor entities: Voxtur Settlement Services, LLC, Voxtur Settlement Services of Alabama, LLC, Voxtur Settlement Services of Arkansas, LLC, Voxtur Title Agency, LLC, Legend Title Company, LLC, Commonwealth USA Settlements, LLC, Orange & Blue Holdings 3.0, LLC, Orange & Blue Holdings 4.0, LLC, and Orange & Blue Holdings 5.0, LLC.

27.     The Title and Settlement Services division is in the process of being wound down.

### v.  *Non-Operational Business Divisions*

28.     Prior to 2022, the Company operated a business line called "Voxtur Valuation and Valuation Vision", which offered valuation services including appraisals, broker price opinions, evaluations, appraisal quality control, consumer inspections and property condition reports.  This business was operated by Valuation Vision, Inc. and Voxtur Valuation, LLC, but is now inactive.

29.     The Company also previously operated "Voxtur Tech" which provided certain real estate technology.  This business division was operated through Voxtur Technologies US Inc.

**C.** **Employees and Payroll**

30.     Prior to staff reduction measures, which began in April 2025, the Voxtur Group had approximately 100 employees throughout North America across various functions, including, among others, project managers, software developers and web application developers, technicians, consultants, paralegals, and accounting and finance staff.

31.     The Voxtur Group currently has 44 employees in Canada. The headcount of the Canadian entities is as follows: iLOOKABOUT Inc. (23), Voxtur (3), Municipal Tax Equity Consultants Inc. (7), MTAG Paralegal Professional Corporation (5), and Appraisers Now Ltd. (6).

32.     The Voxtur Group currently has approximately 38 employees in the United States. The headcount of the American entities is as follows: Voxtur Analytics US Corp. (9), Blue Water Financial Technologies LLC (3), Blue Water Financial Services, LLC, (14) and iLOOKABOUT (US) Inc. (12).

33.     The Voxtur Group is current on its payroll and source deductions.  The Company owes approximately CAD $146,000 in unpaid deferred wages and unpaid vacation pay to certain terminated employees, and approximately CAD $1.4 million in deferred wages to current employees.

**D.** **Leased Premises**

34.     Voxtur's registered head office is located at 543 Ridout Street North, London, Ontario (the "Head Office").  Certain members of the management team in Canada utilize the Head Office space regularly; however, most of the Company's employees work remotely.  The Company does not have a written lease for the current Head Office, and is in the process of moving the Head Office to another location in London, Ontario.

35.     The Debtors do not own any real property.  The Voxtur Group leases five other office spaces as follows (collectively, the "Leased Premises"):

a.      Toronto, Ontario: 175 Bloor Street East, Suite 1105, South Tower.  This is a leased office space where certain members of executive management frequently attend.

b.      Pittsburgh, Pennsylvania: 410 Penn Center West. This is a leased office space that has been vacant since August 2023.

c.      Deephaven, Minnesota: 18258 Minnetonka Boulevard.  This is a leased office space that functions primarily as an office for the Company's Blue Water business.

d.      Tampa, Florida:  2202 N. Westshore Boulevard. This is a leased office space used for administrative functions and as a storage space.

e.      Irving, Texas: 2201 W. Royal Lane. This is a leased office space that is currently subleased to another tenant.

36.     The Company is current in respect of lease obligations at its offices in Toronto, Tampa, and Irving.  With respect to the Pittsburgh and Deephaven offices, the Company currently owes the respective landlords USD $20,327.76 and USD $74,464 in respect of rent for the months of August, September, October, and November 2025.

37.     As indicated, most employees work remotely.  As a result, the Leased Premises are under-utilized and the Company has been in the process of downsizing, including finding tenants to sublease its office spaces.

### E. Cash Management

38.     In the ordinary course of business, the Voxtur Group uses a banking and cash management system ("Cash Management System") to, among other things, collect funds and pay expenses associated with its operations.  The Voxtur Group has bank accounts in both the United States and Canada, including eight (8) Canadian bank accounts with BMO and twelve (12) bank accounts in the United States with Valley, BMO Harris Bank, Jefferson Bank, and Wells Fargo, respectively.  The applicable entity and Hale are party to deposit account control agreements (DACA) for each of these accounts.

39.     The Cash Management System is administered by the Company's finance department, headed by the Chief Financial Officer who is located in London, Ontario.  The Cash Management System has several functions, comprised of: (a) collection of accounts receivable from third parties; (b) disbursements to fund payroll, capital expenditures, maintenance costs, payments to service providers; and (c) intercompany cash transfers among various Debtor entities. Intercompany transfers are made on an "as needed" basis to ensure that each Debtor has sufficient working capital and liquidity to meet its needs.

40.     When cash needs cannot be met through intercompany transfers, funding requests have historically been made directly to the Company's lender.  In the ordinary course, funds are received by the bank account owned by Voxtur Analytics US Corp., and are then transferred as needed to the entities requiring funds.

41.     The Cash Management System and related functions are administered by the respective finance management team in Canada and in the United States.  In the ordinary course, funds are transferred regularly between the Company's accounts based on cash needs.

F.      **Key Customers and Service Providers**

42.     The Company's business is reliant on its relationship with key customers and suppliers.  The Company's major clients include a broad range of parties in the real estate, mortgage, valuation and tax industries, both private and public.  The Company's ANOW business line services mainly lenders, mortgage originators and servicers who can use ANOW's technology to support valuation, loan origination, default management and portfolio analytics.  The ANOW business division also provides services to appraisal firms and appraisal management companies (AMCs) through its SaaS platform.  Other key customers include real-estate brokers, agents, investors and title insurers and government agencies, municipalities, or assessment agencies who use the Company's "assessment" and property tax analytics tools.  The nature of the Company's business technology and the specialized real-time solutions that it offers requires reliable and uninterrupted service from its business partners including, among others, property data providers and/or collectors, external appraisers, and legal/compliance services.  Conversely, viewed from a clientele perspective, seamless operations and continuity of service is a baseline expectation of the Company's customers.  Clients are highly reliant on "always-on" services and there is zero tolerance for service interruptions.

III.   **THE CANADIAN PROCEEDING AND THESE CHAPTER 15 CASES**

43.     The Debtors applied for protection under the CCAA to address acute liquidity constraints and to provide a framework for a court-supervising restructuring, including a sale process.  Voxtur operates an integrated real estate technology platform in Canada and in the Untied States and requires relief to preserve enterprise value and maintain operations while pursuing a restructuring solution.

14

44.     Over the last two years, the Company has faced a series of escalating financial difficulties that have progressively undermined Voxtur's ability to operate as going concern.  The principal financial challenges relate to the acquisition of certain business units that have underperformed, while at the same time giving rise to costly and ongoing business-critical litigation.

45.     These pressures, compounded by sustained high interest rates and a depressed housing market have resulted in escalating liquidity constraints.  The consequent inability to service secured debt has forced the Company into a series of standstill agreement with its lenders.  Such accommodations have now expired leaving the Company in default of its obligations and insolvent on both a balance sheet and cash flow basis.

46.     The Debtors have sustained two years of substantial operating losses and are insolvent on a balance sheet and cash flow basis.  Ordinary course monthly cash expenditures exceed cash receipts.  Based on the DIP Budget (as defined below), without interim financing the Debtors will have insufficient cash to sustain operations through the week ending November 21, 2025.

47.     Immediate relief under the CCAA and Chapter 15 of the U.S. Bankruptcy Code is necessary to stabilize the business, by allowing access to interim financing, enabling management, with the assistance of a monitor appointed in the Canadian Proceeding, to develop and implement a value-maximizing restructuring for the benefit of all stakeholders.

48.     On November 10, 2025, the Debtors commenced a proceeding under the CCAA pursuant to the Initial Order entered in the Canadian Proceeding (the "Canadian Order").  A true and correct copy of the Canadian Order is attached hereto as Exhibit A.

## IV.   FINANCIAL CIRCUMSTANCES AND CASH FLOW

49.   Voxtur has a fiscal year end of December 31.

### A.   Assets

50.   As of March 31, 2025, Voxtur, on a consolidated basis, had total assets of approximately $44.6 million, consisting of approximately $15.4 million in current assets and approximately $29.2 million in non-current assets.  A material portion of the non-current assets relates to intangible assets (including proprietary software and platform assets) and goodwill. Goodwill and identifiable intangible assets together represent a significant component of Voxtur's non-current assets.

51.   The Company's primary assets consist of its proprietary software platforms, data analytics systems, and related intellectual property (the "IP Assets"), which underpin its valuation, tax, title, and data-driven software services.  The Company's IP portfolio comprises software code, patents, trademarks, proprietary databases and trade secrets.  These assets are protected through registrations in Canada and the U.S. and by employee and contractor confidentiality agreements. The IP Assets are primarily held through iLOOKABOUT Inc., Blue Water Financial Technologies, LLC, Appraisers Now Ltd, and Voxtur Analytics Corp., which host, license, and maintain the technology and data infrastructure used across the enterprise.  The Company intends to continue using these IP Assets in the ordinary course during these proceedings to preserve business continuity and stakeholder value.

52.   IP Assets represent a significant portion of the Company's enterprise value and are critical to any restructuring, sale, or going-concern outcome.  For this reason, the litigation proceedings described herein (which relate to the misappropriation of certain IP Assets) are critical to the Company's restructuring.

B.    **Liabilities**

53.    As of March 31, 2025, Voxtur, on a consolidated basis, had total liabilities of approximately $77.7 million, consisting of approximately $74.5 million in current liabilities and approximately $3.2 million in non-current liabilities.  The current liabilities include the current portion of long-term debt and other short-term borrowings, accounts payable and accrued liabilities, and current unearned revenue; the non-current liabilities primarily comprise long-term unearned revenue and lease obligations.

V.    **CREDITORS**

A.    **Senior Secured Debt**

54.    Pursuant to an amended and restated credit agreement dated September 21, 2022 (as amended from time to time) (the "BMO Credit Agreement") between Voxtur and iLOOKABOUT (US) Inc., as borrowers, and Bank of Montreal ("BMO"), as lender, BMO agreed to make a number of credit facilities available to Voxtur (together, the "BMO Credit Facilities"), as follows:

a.    a revolving operating credit facility in the maximum amount of CAD $1,500,000;

b.    a term loan facility in the maximum amount of CAD $20,500,000;

c.    a Blue Water acquisition term loan in the maximum amount of USD $30,000,000; and

d.    a MasterCard facility in the maximum amount of CAD $400,000.

55.    As security for the borrower's obligations under the BMO Facility, Voxtur and certain of its subsidiaries granted the following security in favour of BMO (collectively, the "BMO Security"):

17

a. a general security agreement creating a first-ranking security interest over all present and after-acquired personal property of the borrower and guarantors ("GSA");

b. share pledge agreements in respect of the shares of material subsidiaries (the "BMO Share Pledges");

c. guarantees (the "Guarantees") from each material subsidiary of Voxtur[2]; and

d. assignments of material contracts and intellectual property rights in favour of BMO.

56. The Voxtur Group defaulted under the BMO Credit Agreement on or about March 31, 2023. The Company's account with BMO was escalated to the special loans department in the Fall of 2023 because of continued breaches of financial covenants. In addition, the Company has been unable to service regularly scheduled payments of interest under the BMO Credit Agreement.

57. Between April 2024 and July 2025, Voxtur entered into a number of Accommodation Agreements (the "Accommodation Agreements") whereby, among other things, BMO agreed to forbear from exercising its rights under the BMO Credit Agreement. Pursuant to the Accommodation Agreements, BMO established a temporary revolving facility (the "Interim Revolving Facility") in the maximum amount of CAD $10,177,523.52 to fund the borrowers' shortfalls and working capital requirements, and the legal retainer and initial costs associated with pursuing the Dwelling Block Litigation (as defined herein).

---

[2] The following entities were Guarantors under the BMO Security: ILOOKABOUT INC., MTAG PARALEGAL PROFESSIONAL CORPORATION, VOXTUR TECHNOLOGIES US, INC., VOXTUR SETTLEMENT SERVICES, LLC., APPRAISERS NOW LTD., VOXTUR ANALYTICS US CORP., APPRAISERS NOW US, LLC, BLUE WATER FINANCIAL TECHNOLOGIES HOLDING COMPANY, LLC, BLUE WATER FINANCIAL TECHNOLOGIES, LLC, and BLUE WATER FINANCIAL TECHNOLOGIES SERVICES, LLC.

58.     On or about September 24, 2025, the HCP-FVY, LLC and HCP Fund V-FVY, LLC, affiliates of Hale Capital Partners (together, "Hale" or "DIP Lender") purchased the BMO Credit Facilities from BMO (such transaction, the "Debt Assignment Transaction").  As a result of the Debt Assignment Transaction, Hale is now the sole holder of all obligations owing by the Debtors under and in connection with the assigned BMO Credit Facilities and all related security documents, guarantees, collateral security and ancillary agreements (collectively referred to hereinafter as the "Prepetition Credit Facilities").

59.     Following the Debt Assignment Transaction, pursuant to the Second Amended and Restated Accommodation Agreement entered into in October 2025, a number of additional Voxtur Group entities were added as obligors and guarantors.  The effect is that all of the Debtors are jointly and severally liable in respect of the Prepetition Credit Facilities.

60.     As of the Petition Date, pursuant to the Prepetition Credit Facilities, the Debtors owe Hale the aggregate principal amount of $38,630,518.39, *plus* accrued and unpaid interest at the default rate with respect thereto and any additional fees, costs and expenses (including any fees and expenses of attorneys, financial advisors, and other professionals that are chargeable or reimbursable under the Prepetition Credit Facilities) now or hereafter due under the Prepetition Credit Facilities.

### B.     Perfected Liens on the Collateral

61.     Registrations against the Canadian Debtors under Canada's *Personal Property Security Act* ("PPSA"), and financing statements against the American Debtors under the applicable state's adoption of the Uniform Commercial Code ("UCC") and its registry system for recording liens against personal property, show that (i) the Prepetition Credit Facilities are secured by liens on all of the Debtors' assets (collectively, the "Collateral"), (ii) are perfected under the

applicable jurisdiction's registration system, and (iii) were assigned to Hale in connection with the Debt Assignment Transaction.

### C.      Crown Obligations and Priority Claimants

62.     The Company is current in respect of its source deduction obligations and Harmonized Sales Tax (HST) payments.  Going forward, HST remittances will be reflected in the DIP Budget.  The Company is also current on all source deductions and they are funded to the Debtors' payroll providers as part of the normal payroll cycle.

### D.      Trade Creditors

63.     The Voxtur Group has unpaid trade and other unsecured debt accrued in the normal course of business.  These include unpaid accounts for technology services, software subscriptions, logistics services, professional services, and other suppliers or service providers.  As of November 7, 2025, the Debtors' accounts payable balances totaled approximately USD $4.2 million, attributable to approximately 100 vendors.

64.     Certain of the Debtors' critical service providers have recently imposed more stringent terms as a result of the Applicants' inability to promptly meet trade terms.  Certain service providers have threatened to halt, or have halted services due to non-payment, and/or have escalated collection activities including the issuance of demand letters or threatened litigation.

### E.      Pending Litigation

65.     The Debtors are involved in seven pending litigation proceedings; one in Canada, and six in the United States.  Certain of these matters are particularly critical because they relate to the misappropriation of proprietary technology, and other matters directly affecting the value and protection of the Voxtur Group's assets.  As described below, the outcomes of these

proceedings are material to the Company's financial position and its ability to preserve and monetize its intellectual property portfolio.

66.     The sections below summarize two business-critical litigation proceedings currently ongoing in Minnesota and in Delaware.

### i. *Blue Water Litigation*

67.     Voxtur and its subsidiary Blue Water Financial Technologies, LLC ("Blue Water FT") (and related Blue Water entities) have several pending matters pending in Minnesota and California, relating to a former founder of Blue Water, Alan Qureshi, and his wife, Ellen Qureshi (such litigation, the "Blue Water Litigation").

68.     The Blue Water Litigation involves three (3) proceedings:

a.      *Alan Qureshi v. Voxtur Analytics Corp., Blue Water Financial Technologies, LLC, and Gary Yeoman; Blue Water Financial Technologies, LLC v. Alan Qureshi (Counterclaim Defendant) and Ellen Qureshi and Black Lake Investments, LLC (Third Party Defendants),* Case No. 27-CV-25-89222, pending in Minnesota state court (the "Qureshi Lawsuit");

b.      *Josh Freivogel v. Blue Water Financial Technologies Holding Company LLC, Voxtur Analytics Corp., Rice Park Capital Management LP, Nicholas Smith, Alan Qureshi, Ellen Qureshi,* AAA Case No. 01-25-0001-6527, currently pending in California (the "Freivogel Arbitration"); and

c.      *Alan Qureshi and Ellen Qureshi v. Blue Water Financial Technologies Holding Company, LLC and Blue Water Financial Technologies Services, LLC,* Case No. 27-CV-25-14343, which is Alan and Ellen Qureshi's application for indemnification and advancement of costs related to the

Qureshi Lawsuit and the Freivogel Arbitration (the "<u>Indemnification Case</u>").

69.     The Qureshi Lawsuit and the status of that proceeding in particular is summarized below.

70.     In 2022, Voxtur purchased the holding company that owned the Blue Water business from Alan Qureshi and its other equity owners (the "<u>Blue Water Acquisition</u>") for approximately USD $30 million and the issuance of over 100 million common shares in Voxtur. The total consideration for the Blue Water Acquisition exceeded USD $100 million.

71.     Following the Blue Water Acquisition, Alan and Ellen Qureshi continued to serve as the President and Executive Vice President of Blue Water FT, respectively, until the two resigned in November 2024.

72.     The Voxtur Group's claim against Alan and Ellen Qureshi (which is a counterclaim and third-party claim in the Qureshi Lawsuit) contains serious allegations against Alan, Ellen and their new business, Black Lake Investments, LLC ("<u>Black Lake</u>").

73.     In particular, just two years after selling Blue Water FT to Voxtur, and concurrently with their resignations in November 2024, Voxtur's claim in the Blue Water Litigation alleges that Alan and Ellen Qureshi formed Black Lake, a competing corporate entity, and proceeded to successfully solicit clients and employees from Blue Water FT to Black Lake.  It is alleged that Alan and Ellen Qureshi violated their non-compete agreements with Blue Water FT by soliciting Blue Water FT's customers and, through Black Lake, misappropriated trade secrets and confidential information.

74.     Voxtur's counterclaim and third-party claim was served on March 13, 2025. Ellen Qureshi served a counterclaim against Blue Water FT for breach of contract and declaratory judgment on or about April 22, 2025.

75.     On May 5, 2025, Blue Water filed a motion for preliminary injunction against Alan, Ellen and Black Lake. On July 8, 2025, the Minnesota state court issued its Order denying Blue Water FT's motion on the basis that Blue Water FT could not satisfy the requisite element of irreparable harm, because any lost revenue can be compensated by monetary damages.

76.     The parties attempted to resolve the Qureshi Lawsuit at mediation in July 2025, which mediation did not result in a resolution.

### ii. *Dwelling Blocks Litigation*

77.     Voxtur, Appraisers Now Ltd. and Appraisers Now US, LLC are currently engaged in ongoing litigation in the United States District Court for the District of Delaware against several defendants, including Marty Haldane, Dwelling Blocks LLC, and associated parties (the "Dwelling Blocks Litigation"). The defendants in the Dwelling Blocks claim are former employees of Voxtur (and the ANOW entities).

78.     The Dwelling Blocks Litigation was commenced on or about June 16, 2025, and asserts claims for patent infringement under 35 U.S.C. § 271, copyright infringement, and related relief. Voxtur and its related entities allege that the defendants unlawfully used and misappropriated proprietary software, systems, and intellectual property belonging to Voxtur in connection with Dwelling Blocks LLC ("Dwelling Blocks"), a competing real estate technology company.

79.     The defendants named in the action include former Voxtur associates and affiliated entities: Marty Haldane, Dwelling Blocks LLC, Viacheslav Mednikov, AutomationRE Inc.,

AutomationRE LLC, Ryan Dial, and Olena Ovcharenko, among others.  Voxtur's position is that these individuals and entities misappropriated confidential and proprietary information, including technology owned by Voxtur and its subsidiaries, to build and operate Dwelling Blocks, in violation of Voxtur's intellectual property rights.  The litigation is complex, involving both factual and technical issues regarding software architecture, valuation methodologies, and real estate data systems.

80.     The Dwelling Blocks Litigation remains active.  Numerous procedural motions and discovery steps have taken place, including motions for protective orders, stipulations to extend deadlines, and the exchange of evidence under seal due to the sensitive nature of the intellectual property in dispute.  Voxtur has also brought a motion for a temporary restraining order and expedited discovery, asserting the need to prevent ongoing harm from the alleged infringement. The defendants have opposed these motions and sought extensions of time to respond to the amended complaint.

81.     As of the date of this declaration, no final determination has been made in the Dwelling Blocks Litigation.

## VI.   CHALLENGES, EVENTS LEADING UP TO THE CANADIAN PROCEEDING AND THESE CHAPTER 15 CASES, AND RESTRUCTURING ACTIVITIES

### A.     Post-Merger Acquisitions and Challenges

82.     In February 2021, iLOOKABOUT Corp. completed a significant merger with Voxtur Technologies, Brightline Title, and certain assets of James E. Albertelli, PA, and as part of the transaction changed its name and re-branded from iLOOKABOUT Corp. to Voxtur Analytics Corp.  Voxtur began trading under the new ticker symbol "VXTR".  At the time of the merger, the Company was profitable and growing rapidly.

83.     The 2021 merger was the beginning of a series of six substantial acquisitions that transformed the Company in terms of service offerings.  The Voxtur Group made the following significant acquisitions in the span of only 16 months:

   a.     ANOW in April 2021, which accelerated the development of an automated valuation platform;

   b.     XOME in September 2021, which strengthened Voxtur's valuation division through the addition of a blue-chip client base;

   c.     "Real Wealth" in October 2021, which was an asset management and consumer platform;

   d.     Benutech, in December 2021, which assists in the development of data and SaaS tools;

   e.     MTE, in May 2022, which augmented the Company's Ontario municipal tax consulting line of business; and

   f.     Blue Water FT in September, 2022, which included the addition of various innovative capital market related products and services.

84.     While certain of these acquisitions were positive for the Company's growth and expansion, the Blue Water Acquisition precipitated a series of challenges which contributed to the financial distress and insolvency that the Company now faces.

**B.     Blue Water Acquisition and Litigation**

85.     Blue Water is the Company's business division that provides technology solutions in the mortgage capital markets space.  The Blue Water business is entirely dependent on the use of specialized software that provides pricing, risk assessment and other services in connection with mortgage trading.

86.     As described above, the Blue Water business was founded by Alan Qureshi, and Voxtur acquired the Blue Water business in September 2022 for total consideration of USD $101 million, comprised of approximately USD $30 million and the issuance of over 100 million common shares in Voxtur.  Significant debt had been taken on by the Company to fund the Blue Water Acquisition.

87.     Following the Blue Water Acquisition, Alan Quereshi and his wife Ellen Qureshi continued to serve on the management of Blue Water FT until they resigned in November 2024.

88.     Shortly after the acquisition, it became apparent that the Blue Water business was not performing as expected.  The Company is of the view, as described in detail in the Blue Water Litigation, that the business opportunity presented at the time of the Blue Water Acquisition was grossly misrepresented to Voxtur.  These issues culminated in the Blue Water Litigation described earlier above which alleges, among other things, violations of the Qureshis' non-compete agreements, tortious interference, breach of fiduciary duty, misappropriation of trade secrets (improper use of technology to solicit existing clients), and other allegations.

89.     In addition to the significant damages claimed, the Blue Water Litigation is critical to the Company and its ability to monetize its P Assets.  The Company took on significant debt in order to complete the Blue Water Acquisition, and because of the events that underlie that litigation, there is a level of uncertainty surrounding the value of the acquired assets.

C.      **Pre-Filing Sale Attempts and Divestitures**

90.     In the summer of 2024, the Company engaged BMO Capital Markets to oversee efforts to market and solicit interest from prospective purchasers.  Marketing and sale efforts began in earnest in early 2025.  Multiple potentially interested parties were approached regarding the opportunity to invest in the Company.

91.     The Company received multiple indications of interest from potential purchasers in this process, particularly in respect of its ANOW division, with progress being made toward achieving a sale of that business (the "ANOW Transaction").  Unfortunately, during the course of due diligence, the potential purchaser developed concerns regarding the ownership of intellectual property and proprietary technology.

92.     The intended purchaser ultimately declined to proceed with the ANOW Transaction, at which point substantial resources and effort had already been expended in furtherance of the proposed deal.  The loss of the ANOW Transaction (and loss of volume from a significant client to Dwelling Blocks) factored into the commencement of the Dwelling Blocks Litigation.

93.     The company subsequently paused the pre-filing sale process, in favor of focusing on other priorities, including advancing the litigation claims and working to address financial difficulties and the circumstances otherwise described herein.

**D.      2024 Proxy Fight**

94.     In June 2024, Voxtur became the subject of a proxy contest initiated by a dissident shareholder group known as "Voxtur Shareholders for Accountability" (the "Dissident Group"). The Dissident Group publicly criticized the Company's governance and financial performance, alleging poor capital allocation, excessive dilution, and the lack of a clear strategy to achieve profitability.  They sought to replace a majority of Voxtur's existing board of directors with their own nominees at Voxtur's annual general meeting.

95.     Voxtur's incumbent board responded strongly to the dissident campaign, urging shareholders to vote against the proposed changes.  The Company emphasized that the dissident group concerns were unfounded, and that the proxy fight risked destabilizing ongoing restructuring

efforts and lender negotiations, which were critical to Voxtur's liquidity and operational continuity.  Management warned that a change of control without prior lender consent could jeopardize the Company's ability to maintain its accommodations and waivers, potentially leading to severe financial consequences, including acceleration of debt obligations.  Despite these warnings, the proxy contest intensified through the summer of 2024, with both sides issuing competing press releases and open letters.

96.    The cumulative effect of these events has been severe; the various litigation proceedings have not only imposed significant ongoing legal costs, but has also diverted management attention away from core operations.  The litigation and resulting uncertainty have impaired Voxtur's ability to attract new customers and investors and has had a material impact on the value of Voxtur's IP Assets.  The collapse of the ANOW Transaction eliminated an important source of liquidity and further strained cash flow.  The 2024 proxy battle exacerbated the liquidity crisis, and increased advisory and professional fees by disrupting ongoing lender negotiations at a critical time.  These factors, together with interest rate uncertainty, increasing buyer caution, and a consequent downturn in the housing market, have contributed to declining financial performance and the present inability to service debt obligations as they became due.

97.    On June 28, 2024, the annual meeting of shareholders took place.  Ultimately, the shareholders voted against the Dissident Group's proposal and the existing governance structure was preserved, putting an end to the proxy battle.  However, the battle inflicted a significant drain on the Company's resources, and deepened its existing financial and operational challenges.

**E.    Accommodation Agreements and Debt Assignment Transaction**

98.    The Company's account with BMO was escalated to the special account management unit (SAMU) at the bank in the Fall of 2023.  Since that time, as a result of the

Company's ongoing liquidity restraints, the Voxtur Group entered into a number of Accommodation Agreements with BMO, whereby BMO, among other things, provided additional funding for working capital requirements, including payroll, and agreed to forbear from exercising its rights under the BMO Credit Agreement and the BMO Security.

99.     Hale was an interested party in the Debtors' pre-filing marketing and sales efforts. As indicated above, the Debt Assignment Transaction was completed in September 2025, whereby Hale acquired BMO's senior secured indebtedness.  As a result of the Debt Assignment Transaction, Hale is the sole holder of all obligations owing by the Debtors under and in connection with the Prepetition Credit Facilities and related agreements.

100.     Since the Debt Assignment Transaction, certain events of default have occurred and are continuing under both the Prepetition Credit Facilities and the Accommodation Agreement. To prevent enforcement by Hale under the Prepetition Credit Facilities, the parties entered into a Second Amended and Restated Accommodation Agreement in October 2025.  Pursuant to this agreement, the parties agreed, among other things, to: (a) amend certain provisions of the Prepetition Credit Facilities; (b) satisfy specific reporting requirements; and (c) have new guarantor entities in the Voxtur Group's corporate structure agree to guarantee the payment of outstanding indebtedness arising from the Debt Assignment Transaction.  The additional obligors under the Second Amended and Restated Accommodation Agreement executed security agreements in favor of Hale in connection with the guarantees.  The Second Amended and Restated Accommodation Agreement confirmed the outstanding indebtedness owing to Hale as of October 1, 2025 in the principal sum of USD $36,908,103.61.

101.     The standstill period contemplated by the Second Amended and Restated Termination Agreement extended until October 31, 2025 at which point it terminated in

accordance with its terms.  The Debtors (as borrowers and obligors) are no longer the beneficiaries of any accommodations or standstills and are again in default without any current ability to service or repay the debt.

## VII.   NEED FOR THE CANADIAN PROCEEDING AND THESE CHAPTER 15 CASES

102.    The Debtors are seeking CCAA protection and ancillary protection under Chapter 15 of the U.S. Bankruptcy Code at this time due to the Company's significant liquidity challenges described herein.  The relief requested will stabilize the business and provide Voxtur with an opportunity to address its current challenges and produce a value-maximizing outcome for the benefit of its stakeholders.

103.    The filing for protection under the CCAA and Bankruptcy Code, and the proposed relief sought, are supported by the Company's senior secured creditor and proposed DIP Lender. There are no other secured creditors of the Company.

104.    In light of the operations that the Company has in the United States, Voxtur, in its capacity as Foreign Representative for the Debtors, is seeking recognition of the Canadian Proceeding and the Canadian Order as a foreign main proceeding from the United States Bankruptcy Court.  As set out above, there are a number of Debtors that are incorporated and existing in the United States; however, it is appropriate for proceedings to be commenced under the CCAA with respect to all Debtors, and recognized as foreign main proceedings in these Chapter 15 Cases, because they are all part of an integrated business that has its center of main interests in Ontario, including

a.    Voxtur, the company's ultimate publicly-traded parent company (which wholly owns and/or controls all of the subsidiaries) is domiciled in Canada;

b.     Voxtur's public company regulatory requirements are governed by Canadian securities laws;

c.     The Company's material lending agreements are governed by Ontario and Canadian law;

d.     material financial and strategic management is headquartered in Ontario, and key decision-making is located in Ontario;

e.     the Company's auditors, corporate counsel, and board of directors are all Canadian and domiciled in Canada;

f.     the majority of the Company's employees and the majority of executive management are located in Canada; and

g.     Supplier and customer relations are managed from Ontario.

105.    As indicated, there is substantial corporate interdependence among all entities in the Company's corporate structure including with respect to finance, information technology, human resources, and legal functions.

106.    There is a substantial threat of irreparable harm to the Debtors' estates and creditors if relief is not granted pursuant to 11 U.S.C. §§ 1519, 1520, and 1521.

107.    Relief is urgently needed to protect the assets of the Debtors, and the interests of creditors, pursuant to 11 U.S.C. § 1519(a).

108.    Relief is also necessary to protect the assets of the Debtors, and the interests of creditors, pursuant to 11 U.S.C. § 1521(a).

109.    Voxtur is aware of the following litigation pending in the United States where one or more Debtors is a party:

a.     *Josh Freivogel v. Blue Water Financial Technologies Holding Company, LLC, Voxtur Analytics US Corp., Voxtur Analytics Corp., Nicholas Smith,*

        *Alan Qureshi, and Ellen Qureshi*, American Arbitration Association case no. 01-25-0001-6527;

b.    *Alan Qureshi v. Blue Water Financial Technologies LLC, Voxtur Analytics Corp., and Gary Yeoman*, Hennepin County District Court (Minnesota), case no. 27-CV-25-8922;

c.    *Matt Lamont v. Voxtur Analytics Corporation, Ryan Marshall, Robin Dyson, Jordan Ross, and Does 1-10*, Superior Court of California, County of Orange, case no. 2025-01472884;

d.    *Voxtur Analytics Corp., Appraisers Now LTD., and Appraisers Now US LLC v. Marty Haldane, AutomationRE Inc, AutomationRE (US) Inc., Dwelling Blocks, LLC, Viacheslav Mednikov, Ryan Dial, Olena Ovcharenko, and Does 1-10*, U.S. District Court for the District of Delaware, case no. 1:25-cv-00742-GBW-SRF;

e.    *Alan Qureshi and Ellen Qureshi v. Blue Water Financial Technologies Holding Company, LLC, and Blue Water Financial Technologies Services, LLC*, Hennepin County District Court (Minnesota), case no. 27-CV-25-14343; and

f.    *U.S. Bank National Association dba U.S. Bank Equipment Finance v. Commonwealth USA Settlements, LLC*, Pennsylvania Court of Common Pleas, case no. GD-25-005930.

And the following litigation pending in Canada where one or more Debtors is a party:

g.    *iLOOKABOUT Inc. v. Farhi Holdings Corporation*, London Superior Court of Justice, case no. CV-23-1116-0000.

## VIII.    POST-PETITION FINANCING AND PRIMING LIENS

110.    Hale, as DIP Lender, has agreed to provide the Debtors with a post-petition credit facility (collectively, the "<u>DIP Facility</u>") in the initial principal amount of up to $2,040,000 and the final principal amount of up to $2,350,000, pursuant to the DIP Facility Term Sheet dated as of November 7, 2025 (the "<u>DIP Term Sheet</u>").  A true and correct copy of the DIP Term Sheet is attached hereto as <u>Exhibit B</u>.

111.    The purpose of the DIP Facility is to fund the Company's essential working capital needs and professional fees and expenses through the expected duration of the Canadian Proceeding and these Chapter 15 Cases.

112.    Among other things, the DIP Term Sheet provides for the DIP Lender's review and approval of an initial thirteen-week rolling cash projection budget and weekly updates thereof (collectively, the "DIP Budget") for the Debtors to use the DIP Facility advances and cash collateral (collectively, "Cash Collateral") in compliance with the approved DIP Budget and the terms of the DIP Term Sheet.  A true and correct copy of the initial DIP Budget is attached hereto as Exhibit C.

113.    The Debtors, the DIP Lender, the monitor in the Canadian Proceeding, and their respective advisors, analyzed the amount of funding necessary to maintain the Company's business operations and to fund the Canadian Proceeding and these Chapter 15 Cases, and negotiated and structured the DIP Facility and DIP Budget to satisfy the Company's projected post-petition funding needs.  The Debtors and the monitor believe that the terms of the DIP Facility are reasonable and customary for loans of this nature.  The DIP Facility and DIP Budget are the product of good faith, arms' length negotiations by and between the Debtors, the monitor in the Canadian Proceedings, and the DIP Lender, as well as their respective advisors and counsel.

114.    The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral, solely to the extent and for the purposes permitted in the approved DIP Budget to, among other things, (A) permit the orderly continuation of their businesses; and (B) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors.  The DIP Facility also provides a mechanism for the DIP Lender to fund the offensive litigation claims brought by the Debtors, which the Debtors believe have significant

value.  The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is vital to the preservation and maintenance of the Debtors' going concern value and successful restructuring process.  The Debtors will not have sufficient sources of working capital and financing to operate their businesses in the ordinary course of business and pay Professionals throughout the Canadian Proceeding and these Chapter 15 Cases without access to the DIP Facility and the authorized use of Cash Collateral.  The Company does not have sufficient liquidity to continue normal course operations during the DIP Budget period in the absence of the DIP Facility.  Absent the DIP Facility, the Debtors will very shortly become unable to meet their obligations as they become due.

115.    As discussed above, the Debtors' ordinary course cash expenditures exceed their cash receipts.  The periods of relief and forbearance extended pursuant to the series of accommodation agreements are no longer available.  Based on the DIP Budget, the Debtors will have insufficient cash to sustain operations through the week ending November 21, 2025, absent the DIP Facility.

116.    The DIP Facility is the best source of debtor-in-possession financing available to the Debtors at this time.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Debtors would be unable to obtain (i) adequate unsecured credit allowable either under 11 U.S.C. §§ 364(b) and 503(b)(1), or under 11 U.S.C. § 364(c)(1), (ii) adequate credit secured only by a senior lien on unencumbered assets of their estates under 11 U.S.C. § 364(c)(2), and a junior lien on encumbered assets under 11 U.S.C. § 364(c)(3), or (iii) secured credit under 11 U.S.C. § 364(d)(1) from sources

other than the DIP Lender on terms more favorable than the terms of the DIP Facility. The only viable source of post-petition credit available to the Debtors is the DIP Facility. The Debtors require both additional financing under the DIP Facility and the continued use of Cash Collateral to satisfy their post-petition liquidity needs.

117.     The security interests and liens granted pursuant to the DIP Term Sheet are appropriate under 11 U.S.C. § 364(d) because, among other things, (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, pre-petition security interest or lien in the property of the Debtors' estates, (ii) the holders of such valid, perfected, prepetition security interests, and liens have consented to the security interests and Priming Liens granted pursuant to the DIP Term Sheet or, (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected. More specifically, the DIP Lender is the only holder of a valid, perfected, pre-petition security interest or lien in the property of the Debtors' estates, and the DIP Lender has consented to its own Priming Liens on the terms set forth in the DIP Term Sheet.

118.     The terms and conditions of the DIP Facility and the use of Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the monitor in the Canadian Proceeding, and the DIP Lender, with the assistance of their respective counsel and advisors. The DIP Lender has consented to the use of Cash Collateral pursuant to the DIP Budget and DIP Term Sheet in "good faith" within the meaning of 11 U.S.C. § 364(e). Any credit to be extended, loans to be made, and other financial accommodations to be extended to the Debtors by the DIP Lender have been allowed, advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of 11 U.S.C. § 364(e) by the DIP Lender in express reliance upon the protections offered by 11 U.S.C. § 364(e).

119.    Authorization for the Debtors to execute the DIP Term Sheet, to continue using Collateral, including Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  The terms of the DIP Term Sheet (including the Debtors' continued use of the Collateral, including Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the DIP Lender's consent thereto.  Implementation of the DIP Term Sheet and DIP Budget will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful restructuring process.  Absent the DIP Facility, the Debtors' estates will be immediately and irreparably harmed.

120.    The availability of the first advance under the DIP Facility is subject to and conditional upon, among other things, approval in the Canadian Proceeding and these Chapter 15 Cases, respectively, of the DIP Facility, and certain priming liens approved by the DIP Lender on the terms set forth in the DIP Term Sheet (collectively, the "Priming Liens"), subject to the following priorities:  *first*, the Administrative Liens; *second*, the DIP Liens, and *third*, the D&O Liens:

a.      *Administrative Liens*.    As security for the professional fees and disbursements of the Foreign Representative's and Debtors' Canadian and U.S. counsel and the monitor appointed in the Canadian Proceeding and the monitor's counsel (collectively, the "Professionals"), the Professionals shall be granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "Administrative Liens") in all Collateral, in each case, senior to all other liens or claims; *provided, however,* the Administrative Liens shall secure the maximum aggregate amount of $280,000 on an interim basis,

and $450,000 on a final basis.   It is contemplated that the Professionals will have extensive involvement during the Canadian Proceeding and these Chapter 15 Cases.  The Professionals have contributed and will continue to contribute to the Debtors' restructuring efforts.  In preparation of the cash flow forecast, the Debtors, in consultation with the proposed monitor in the Canadian Proceeding, considered the professional fees forecasted to be incurred on a weekly basis during the cash flow period.  Accordingly, I believe the quantum of the Administration Charge sought is reasonably necessary at this time to secure the professional fees of the Professionals.

b.      *DIP Liens*.  As security for any and all obligations arising under or related to the DIP Facility (collectively, the "DIP Obligations"), the DIP Lender shall be granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "DIP Liens") in all Collateral, in each case, subject and subordinate to only the Administrative Liens and D&O Liens.

c.      *D&O Liens*.  As security for the indemnity granted by the Debtors to their directors and officers ("D&Os") relating to personal liability for unpaid employee liabilities or tax liabilities under which directors and officers can be held liable under Canadian law, the D&Os shall be granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "D&O Liens") in all Collateral, in each case, subject and subordinate to only the Administrative Liens; *provided, however,* the D&O Liens shall secure the maximum aggregate amount of $620,000 on an interim and final basis.  To ensure the ongoing stability of the Debtors' business during the Canadian Proceeding and these Chapter 15 Cases, the Debtors require the continued participation of the D&Os who manage their business and activities.  The D&Os of the Debtors have considerable institutional knowledge and valuable experience regarding the various business divisions of the Debtors.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

EXECUTED: November 11, 2025

Gary Yeoman, Chairman
Voxtur Analytics Corp.
543 Ridout Street North
London, Ontario, N6A 2P8

38